■ JAMES E. FRELIGH II, Respondent, v GOVERNMENT EM-PLOYEES INSURANCE COMPANY, Appellant. [59 NYS3d 597]—

McCarthy, J.P. Appeal from an order of the Supreme Court (Gilpatric, J.), entered November 16, 2016 in Ulster County, which denied defendant's motion for summary judgment dismissing the complaint.

On December 23, 2012, plaintiff allegedly sustained various injuries when the vehicle that he was operating was rear-ended by another vehicle. At the time of the accident, plaintiff, who had worked in the automotive parts and repair industry for a number of years, had been unemployed for approximately seven months. In January 2013, plaintiff submitted an application for no-fault benefits to defendant, his insurance carrier. With respect to the lost wages portion of the application, plaintiff indicated that he "was due to start [a] new job" but had been unable to work since December 23, 2012 as a result of the injuries that he had sustained in the accident. Plaintiff further indicated that details regarding his position, including his salary and the employer's name and address, would be provided.

Plaintiff thereafter provided defendant with a copy of his employment application dated December 15, 2012, which reflected that plaintiff had been offered a job at VW Parts, Inc. (hereinafter the parts business) commencing on January 1, 2013 and at a salary of $2,000 per week, with benefits. Defendant requested additional documentation in support of plaintiff's claim and, when such claim remained unpaid, plaintiff commenced this action seeking to recover no-fault benefits for the lost wages allegedly sustained. Defendant answered and raised plaintiff's failure to provide proper verification of his claim as an affirmative defense. Following discovery, defendant moved for summary judgment dismissing the complaint—citing plaintiff's failure to provide proper verification of his claim and asserting that the claim for lost wages was speculative. Supreme Court denied defendant's motion, prompting this appeal. We reverse.

Insurance Law § 5102 (a) (2) provides that an individual who

makes a claim under the no-fault law must be compensated for "[l]oss of earnings from work which the person would have performed had he [or she] not been injured" (see *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 458 [1980]). The statutory and regulatory provisions that govern the recovery of lost earnings "contemplate[ ] a degree of certainty in the calculation of lost wages" (*Sharpe v Allstate Ins. Co.*, 14 AD3d 774, 775 [2005]). With respect to the recovery of lost earnings, the Legislature did not intend for plaintiffs to receive windfall recoveries or for insurance carriers to suffer undue financial hardship (see *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d at 457). Instead, the Legislature intended "to compensate the accident victim for the earnings he or she would have, in fact, realized" (*id.*). Consistent with this principle, a plaintiff is entitled to "demonstrated future earnings reasonably projected" (11 NYCRR 65-3.16 [b] [3]).

As an initial matter, we agree with plaintiff and our dissenting colleagues that, on this motion for summary judgment, we must treat as credible plaintiff's testimony and the testimony of William Hrazanek, who was the sole shareholder of the parts business and who allegedly offered plaintiff employment (see *Coyle v Bommarito*, 106 AD3d 1324, 1327 [2013]; *Tenkate v Tops Mkts., LLC*, 38 AD3d 987, 989 [2007]). Thus, we credit Hrazanek's claims, despite the fact that he admitted, among other things, that (1) he had previously pleaded guilty to the crimes of insurance fraud and offering a false instrument, (2) he had made false sworn statements in regard to the bankruptcy proceeding of a corporation, (3) he had initiated that bankruptcy proceeding as a "ruse" to forestall creditors and (4) he had paid his wife a salary from the parts business while she was a student at Columbia University for her "learning purposes." Even while crediting Hrazanek's and plaintiff's claims, however, the record reveals that their contentions are immaterial to the issue of the reasonableness of plaintiff's alleged projected future earnings as an employee of the parts business. Regardless of the genuineness of Hrazanek's offer of employment, uncontested evidence regarding the parts business and its finances during the relevant time period establish as a matter of law that it is unreasonable to project that, but for plaintiff's accident, the parts business would have actually employed plaintiff at a salary of $2,000 a week.

Here, the uncontested evidence established that the parts business was in physical and financial disrepair after Hurricane Irene struck in 2011 and that it remained in such a state at the time that plaintiff allegedly received a job offer

and thereafter. Hrazanek testified that the parts business conducted its operations from three different locations—a warehouse, operating offices that were attached to garage bays and a junkyard. According to Hrazanek, the hurricane severely flooded the warehouse and destroyed $4.8 million of inventory held therein. The parts business never resumed operations at the warehouse. At the operating offices, the hurricane flooded cars that were in the yard, washing some away, and destroyed the inventory in the bays. Hrazanek explained that the actual offices and the parts inventory that were stored therein remained unaffected by the hurricane.

Further, Hrazanek testified that he had hired plaintiff because they had plans to open an automobile repair shop. Defendant made a Freedom of Information Law request to the Town of Middletown, Delaware County—where the parts business was located—in regard to any information indicating that Hrazanek or the parts business had made efforts to open an automobile repair shop. The Town's response established that, between November 2012 and January 2013—the month that plaintiff was supposed to begin working—neither Hrazanek nor the parts business had submitted any applications for any relevant licences or certificates in regard to operating an automobile repair shop. Thus, despite Hrazanek's claim that the parts business was "basing [its] future on [plaintiff]" in regard to their "plans to open up the [automobile] repair shop," the uncontested evidence established that plaintiff would not have had any automobile repair shop to run in January 2013.[1] Hrazanek further acknowledged that he never opened such a repair shop.

Moreover, as additional evidence of the financial distress of the parts business, Hrazanek acknowledged that it was obligated to pay the lease on the warehouse and the operating offices, and that it ceased to do so after Hurricane Irene. In addition, the parts business's financial records established that it paid three employees in December 2012, the month before plaintiff was allegedly intended to become an employee; Larissa Guselnikova, Hrazanek's wife, was paid $1,442.31 per week, Bruce Hoornbeek was paid approximately $500 per week and Eric Preisendorfer was paid $1,325 per week. The records fur-

---

1. When Hrazanek claimed that the future of the business depended on plaintiff, he was referring to his plan to have plaintiff operate an automobile repair shop. Despite being deposed twice, Hrazanek never stated that he had any plans for plaintiff to dismantle vehicles for parts, let alone that plaintiff dismantling vehicles and selling parts—the work that the parts business was already engaged in—was the future of the parts business.

ther indicate that as of January 2013, Preisendorfer was the only employee that remained on the payroll, and that the parts business did not pay him or any other employees after that month. A member of defendant's special investigation unit visited the operating offices of the parts business in October 2013 and found the building padlocked and without any employees present. Finally, Hrazanek acknowledged that he sold the parts business in 2014 for $40,000.[2] Notably, this transaction indicates that the entire value of the parts business was equal to the value of 20 weeks of plaintiff's projected salary, excluding the costs of plaintiff's benefits and other employer obligations. Therefore, uncontested proof establishes that the parts business was in financial distress at the time that plaintiff was allegedly offered a job and that it ceased operations, at the latest, shortly after plaintiff's anticipated start date.

Moreover, defendant provided proof that discounted the possibility that, had plaintiff been able to contribute his efforts to the parts business, it would not have failed and he would have received his alleged proposed salary. Defendant submitted evidence regarding plaintiff's demonstrated ability to run an automobile repair business by submitting plaintiff's deposition and certain of his tax returns. According to plaintiff, his most recent employment was owning and operating an automobile repair shop and gas station, which plaintiff explained went out of business due to the "economy." Plaintiff's tax returns provided objective evidence of his lack of success in owning and operating such a business; in 2012—the last year in which he owned and operated that business—he reported that it had a net loss of $6,923.

Considering the foregoing, Hrazanek's and plaintiff's subjective beliefs about the financial health of the parts business and/or their subjective beliefs about plaintiff's skills are immaterial to the resolution of whether it is reasonable to project that the parts business would have employed plaintiff at a salary of $2,000 a week. In contrast, the uncontradicted evidence that the parts business was failing, that it had not made any efforts to acquire or open an automobile repair shop, and that, even if it had, plaintiff had a demonstrated history of being unable to run a profitable automobile repair shop all bear on the reasonableness of such a projection. That material evidence

---

**2.** Plaintiff claimed that the parts business had 1,500 to 2,000 vehicles waiting to be dismantled and sold for parts. Nonetheless, the uncontradicted evidence remains that the actual value of the parts business, which would include those vehicles and their parts, was $40,000.

established as a matter of law that the projection that plaintiff would have received $2,000 a week from the parts business is unreasonable (*see Sharpe v Allstate Ins. Co.*, 14 AD3d at 775; *see generally Bailey v Jamaica Buses Co.*, 210 AD2d 192, 192 [1994]). Accordingly, defendant's motion for summary judgment dismissing the complaint should have been granted. This determination renders academic defendant's alternative argument for dismissal, that plaintiff failed to provide proper verification of his claim.

Rose and Devine, JJ., concur.

Egan Jr., J. (dissenting). The crux of defendant's argument upon appeal is that, as of the filing of plaintiff's application for no-fault benefits, his alleged future employer, VW Parts, Inc. (hereinafter the parts business), "was a defunct business" and, therefore, "there was no actual employment available to plaintiff." Absent a legitimate job opportunity, defendant's argument—and the majority's premise—continues, plaintiff's claim for lost wages is entirely speculative, thereby warranting dismissal thereof. We disagree and, therefore, respectfully dissent.

To our analysis, the majority has engaged in an unduly narrow reading of the record—seizing upon those facts that would militate in favor of dismissing plaintiff's claim while discounting any proof that could reasonably be construed as supporting plaintiff's contention that he had a legitimate job offer and, hence, that his future earnings were in fact reasonably projected. In this regard, it bears repeating that, on a motion for summary judgment, we must view the evidence "in the light most favorable to the nonmoving party, who is afforded the benefit of every reasonable inference" to be drawn therefrom (*Hall v Queensbury Union Free Sch. Dist.*, 147 AD3d 1249, 1250 [2017]; *see Giglio v Saratoga Care, Inc.*, 117 AD3d 1143, 1145 [2014]). Applying that standard to the record before this Court, we find questions of fact as to whether plaintiff indeed had a bona fide position with the parts business effective January 1, 2013 and, further, whether plaintiff would have been able to begin work at the stated salary but for the intervening motor vehicle accident.

As the majority has recounted at length, there indeed is no question that the parts business and its sole shareholder, William Hrazanek, had—in the wake of Hurricane Irene—fallen on hard times. Against this backdrop, however, the record nevertheless reflects that, on or about December 15, 2012, Hrazanek offered plaintiff, whom he had known for approximately 15 years, a position as a parts specialist and

warehouse manager; plaintiff's employment in that capacity was to commence on January 1, 2013, and his salary was slated to be $2,000 per week (including benefits). Although plaintiff's projected salary exceeded the salaries paid to other employees of the parts business, Hrazanek testified that no one else possessed plaintiff's qualifications and that he was effectively "basing [the] future" of his business upon plaintiff's expertise. Hrazanek further testified that plaintiff "had worked at numerous Audi dealers and had been to all of the schools and so forth," leading Hrazanek to conclude that plaintiff was the person he needed to "expand the business and get back on track after the flood."[1] Plaintiff's affidavit in opposition to defendant's motion largely echoed Hrazanek's account of plaintiff's hiring—with plaintiff averring that he was offered and accepted a position with the parts business eight days before the accident occurred, that he was scheduled to begin work in January 2013 and that, as a result of the accident, he was unable to do so. According to plaintiff, who had more than 25 years of experience in the automotive parts industry, his new position with the parts business would consist of dismantling vehicles and warehousing the individual parts, and he would utilize his extensive knowledge and experience regarding "which parts fit which vehicles and which parts [were] interchangeable" to "facilitate the sale of vehicle parts." As of December 2012, plaintiff averred, the parts business had "about 1,500 to 2,000 intact cars awaiting to have [their] parts stripped, labeled and warehoused."[2] In light of such proof, we agree with Supreme Court that, as noted previously, the record as a whole contains questions of fact as to whether plaintiff indeed had a bona fide position with the parts business effective January 1, 2013 and, further, whether plaintiff would have been able to begin work at the stated salary but for the intervening motor vehicle accident.

In reaching a contrary conclusion, the majority relies upon,

---

1. According to the majority, "[w]hen Hrazanek claimed that the future of the business depended on plaintiff, he was referring to his plan to have plaintiff operate an automobile repair shop." While that is one possible interpretation of Hrazanek's testimony, we read Hrazanek's testimony in a more neutral fashion—leading to the conclusion that Hrazanek generally viewed plaintiff as an asset to building and/or rebuilding the various components of the business.

2. While the majority makes much of the fact that Hrazanek did not expressly state that plaintiff's job would include dismantling vehicles and selling their parts, plaintiff's affidavit makes clear that he understood that such tasks would be part of his new position—a fact born out by the employment application that plaintiff completed and Hrazanek signed, which reflects that plaintiff was being hired as a parts specialist and warehouse manager.

among other things, the fact that, after plaintiff's anticipated start date came and went, the parts business ceased operations altogether and ultimately was sold. This salient fact, however, cuts both ways. In other words, while the majority cites the eventual failure of the parts business as support for the proposition that it was a defunct operation from the very beginning, the failure of such business also lends credence to Hrazanek's claim that the entire future of his overall business hinged upon hiring someone with plaintiff's particular and demonstrated skill set.

The majority's reliance upon plaintiff's purported lack of success in running his own business is, to our analysis, similarly misplaced. Even assuming, without deciding, that the majority's interpretation of plaintiff's tax returns indeed leads to the inevitable conclusion that he would be unable to singlehandedly operate a successful automobile repair business, the fact remains that plaintiff was offered a position as a parts specialist and warehouse manager, that—as noted previously—plaintiff had more than 25 years of experience in the automotive parts industry and that, whatever other inventory Hrazanek may have lost in the hurricane or whatever other financial setbacks he may have suffered, the parts business had—as of December 2012—between 1,500 and 2,000 vehicles waiting to be dismantled and sold for parts. As for the majority's conclusion that "the actual value of the parts business, which would include those vehicles and their parts, was $40,000," we do not subscribe to the implicit assumption that the eventual "fire sale" value of the business necessarily was indicative of the value of the underlying inventory as of January 2013. Nor are we persuaded that the ultimate sale price obtained by Hrazanek—once plaintiff was injured—somehow bears upon whether Hrazanek could have met plaintiff's promised salary had their business relationship gone forward.

Finally, our conclusions in this regard are not, as the majority suggests, predicated upon Hrazanek's and plaintiff's subjective beliefs as to either the financial viability of the parts business, the success of the planned repair shop or the breadth of plaintiff's automotive skills. Rather, the issue distills to—and our analysis is focused upon—whether, based upon a review of the record as a whole and construing all of the proof contained therein in the light most favorable to plaintiff, plaintiff's future earnings were reasonably projected. In reversing and granting defendant summary judgment, the majority does what is not ours to do—judge the credibility of the witnesses. Given the conflicting proof, we think that Supreme Court was right to let a jury judge plaintiff's account.

Mulvey, J., concurs. Ordered that the order is reversed, on the law, with costs, motion granted and complaint dismissed.